IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| TRIPLE M HOUSING LTD., )<br>    Plaintiff, )<br> )<br>v. )<br> )<br>BIOMASS COMBUSTION SYSTEMS, INC., )<br>    Defendant. )<br> ) | Docket No. | |

## COMPLAINT AND JURY DEMAND

NOW COMES plaintiff Triple M Housing Ltd., by and through its counsel, and states as

its Complaint and Jury Demand as follows:

### PARTIES

1.      The plaintiff, Triple M Housing Ltd. ("Triple M"), is a body corporate

incorporated pursuant to the laws of the Province of Alberta, Canada.  At all times material

Triple M carried on business as a manufacturer of prefabricated housing in the County of

Lethbridge in the Province of Alberta, Canada.

2.      At all times material, Triple M owned and occupied an industrial manufacturing

facility ("Facility") located at 185 Stubb Ross Road, Lethbridge, Alberta, T1K 7N3.

3.      The defendant, Biomass Combustion Systems, Inc. ("Biomass"), is a

Massachusetts domestic corporation with its principal place of business at 67 Millbrook Street,

Suite 505, Worcester, Massachusetts.  Upon information and belief, Biomass conducts business

as a designer, fabricator and/or retailer of industrial shop heaters.

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C.

§1332(a)(2), in that the matter in controversy exceeds the sum of seventy-five thousand dollars

($75,000.00), exclusive of interest and costs, and is between a citizen of this Commonwealth and a citizen of a foreign state.

5.      Venue is proper in this Court, pursuant to 28 U.S.C. §1391(a)(1), in that the defendant resides in this district.

FACTS COMMON TO ALL COUNTS

Acquisition of Shop Heater

6.      In October 2006, representatives of Triple M attended the Building Component Manufacturers Systems Conference ("Conference") in Houston, Texas.  At the Conference, Biomass and/or agents acting on behalf of Biomass established a booth for the purpose of disseminating information and soliciting sales orders with respect to Biomass products, including the B.C.S. Shop Heater Model 36, an industrial shop heater designed and fabricated by Biomass and its agents.

7.      At the Conference, representatives of Triple M expressly or by implication made known to Biomass and/or its agents that Triple M had an interest in the B.C.S. Shop Heater Model 36 and Triple M's intended purpose for the shop heater.  Biomass and/or its agents were advised of the nature of Triple M's business operations, including but not limited to the following information:

(a)      Triple M was in the business of manufacturing prefabricated homes in an indoor facility;

(b)      Triple M's operations produced a large volume of wood produce scrap and off-cuts; and

(c)      As a result of the materials present at the Triple M Facility, it was highly susceptible to the spread of fire.

8.      Biomass and/or its agents represented to Triple M that the B.C.S. Shop Heater Model 36 was a safe and suitable product for use at the Triple M Facility.  In reliance on the skill and judgment of Biomass and/or its agents, Triple M was induced to purchase a B.C.S. Shop Heater Model 36.

9.      Following the Conference, Triple M's representatives returned to Alberta and placed an order with Biomass for a B.C.S. Shop Heater Model 36 (the "Shop Heater Contract").

10.     Biomass delivered a B.C.S. Shop Heater Model 36 (the "Shop Heater") to the Facility in early December 2006.

11.     The Shop Heater was installed and placed into service at the Facility in January 2007.

### The Fire

12.     On October 23, 2007, the Shop Heater caused a tinderbox or other flammable material positioned in the vicinity of the Shop Heater to ignite.

13.     As a result of windy conditions, fire spread rapidly through the Facility, resulting in its complete destruction.

14.     As a result of the fire, the Facility was completely destroyed, including all complete and partially complete products, raw materials, tools, office equipment, furniture, and records at the Facility.

15.     As a result of the destruction of the Facility, Triple M was unable to fulfill existing customer orders, was unable to take new customer orders, and was forced to relocate to new premises.

16.     As a result of the above, Triple M has sustained special damages for its property losses, cleanup and remediation costs, relocation expenses, loss of business records, business

interruption and loss of profit, and lost employee time in an amount estimated to exceed

$28,000,000.  Triple M's losses are expected to continue.

COUNT I – NEGLIGENCE

17.     Triple M repeats and incorporated by reference the allegations contained in

paragraphs 1 through 16 above, as if fully stated herein.

18.     Biomass owed a duty of reasonable care in the design, manufacture and/or sale of

the Shop Heater.  This duty was owed to a foreseeable user such as Triple M.

19.     Biomass stood in a relationship of proximity with Triple M such that Biomass

knew, or should have known, that want of care on the part of Biomass might result in an

unreasonable risk of harm to Triple M.  As a result, Biomass owed Triple M a duty of care in tort

to Triple M, including but not limited to a duty to:

(a)     supply a Shop Heater that was of merchantable quality;

(b)     supply a Shop Heater that was reasonably fit for its intended purpose;

(c)     supply a Shop Heater with an adequate operation and maintenance

manual;

(d)     adequately warn Triple M of the dangers of placing combustible materials

near the Shop Heater;

(e)     design and manufacture the Shop Heater in such a fashion that heat,

sparks, or other sources of fire would not travel or radiate from the Shop Heater, creating

a risk of fire;

(f)     adequately warn Triple M of the fire risks associated with the operation of

the Shop Heater;

(g)    design, fabricate, and deliver a Shop Heater that did not create a fire

hazard;

(h)    supply a Shop Heater that was in compliance with applicable laws,

statutes, and regulations;

(i)    provide adequate and accurate representations to Triple M regarding the

safety and adequacy of the Shop Heater; and

(j)    make reasonable inquiries or to sufficiently inform itself of the intended

operating conditions and circumstances for the Shop Heater.

20.    Biomass breached its duties to Triple M, including but not limited to its duty of

reasonable care, by designing, manufacturing and/or selling to Triple M a defective and

unreasonably dangerous Shop Heater that ultimately caused the fire on October 23, 2007.

21.    The unreasonably dangerous conditions in the Shop Heater caused the fire, which

caused damage to Triple M.

<u>COUNT II – BREACH OF EXPRESS WARRANTIES</u>

22.    Triple M repeats and incorporated by reference the allegations contained in

paragraphs 1 through 21 above, as if fully stated herein.

23.    In the Shop Heater Contract, Biomass expressly warranted the following:

(a)    that the Shop Heater was safe;

(b)    that the Shop Heater would be of merchantable quality;

(c)    that the Shop Heater would be reasonably fit for its intended purpose;

(d)    that the Shop Heater would be supplied with appropriate operating

instructions;

(e)    that the Shop Heater would not create a fire hazard;

(f)      that the Shop Heater and operating materials supplied with it would comply with all applicable laws, statutes, and regulations; and

(g)      that the Shop Heater would be supplied with appropriate safety warnings and precautions.

24.      The Shop Heater was not in fact safe, merchantable, reasonably fit for its intended purpose, supplied with appropriate operating instructions or supplied with appropriate safety warnings and instructions, and the Shop Heater did create a fire hazard and did not comply with all applicable laws, statutes, and regulations, such that Biomass breached its express warranties to Triple M, the purchaser of the Shop Heater.

25.      Triple M's damages as the result of the fire were caused by the breach by Biomass of its express warranties to Triple M.

<u>COUNT III – BREACH OF IMPLIED WARRANTIES</u>

26.      Triple M repeats and incorporated by reference the allegations contained in paragraphs 1 through 25 above, as if fully stated herein.

27.      Biomass was a merchant regularly selling shop heaters to consumers such as Triple M, and did in fact sell Triple M the Shop Heater.

28.      Biomass impliedly warranted the following:

(a)      that the Shop Heater was safe;

(b)      that the Shop Heater would be of merchantable quality;

(c)      that the Shop Heater would be reasonably fit for its intended purpose;

(d)      that the Shop Heater would be supplied with appropriate operating instructions;

(e)      that the Shop Heater would not create a fire hazard;

(f)    that the Shop Heater and operating materials supplied with it would comply with all applicable laws, statutes, and regulations; and

(g)    that the Shop Heater would be supplied with appropriate safety warnings and precautions.

29.    The Shop Heater was not in fact safe, merchantable, reasonably fit for its intended purpose, supplied with appropriate operating instructions or supplied with appropriate safety warnings and instructions, and the Shop Heater did create a fire hazard and did not comply with all applicable laws, statutes, and regulations, such that Biomass breached its implied warranties to Triple M, the purchaser of the Shop Heater.

30.    Triple M's damages as the result of the fire were caused by the breach by Biomass of its implied warranties to Triple M.

<u>COUNT IV – BREACH OF CONTACT</u>

31.    Triple M repeats and incorporated by reference the allegations contained in paragraphs 1 through 30 above, as if fully stated herein.

32.    Biomass contracted with Triple M to provide a space heater that was safe, merchantable, reasonably fit for its intended purpose, and complied with all applicable laws, statutes and regulations.  Biomass also contracted to provide appropriate operating instructions and appropriate safety warnings and instructions for the Space Heater.

33.    Biomass has breached its contract with Triple M by failing to provide a space heater that was safe, merchantable, reasonably fit for its intended purpose, and complied with all applicable laws, statutes and regulations.  Biomass also breached its contract with Triple M by failing to provide appropriate operating instructions and appropriate safety warnings and instructions for the Space Heater.

34.	Triple M has been damaged by the breaches by Biomass of its contract.

**WHEREFORE**, Plaintiff Triple M Housing Ltd. asks this Court to grant the following relief:

1.	Enter judgment for Triple M Housing Ltd. against Biomass Combustion Systems, Inc. on all Counts of this Complaint;

2.	Award damages, interest, attorneys' fees and costs to Triple M Housing Ltd. in an amount equal to be determined at trial; and

3.	Grant such other and further relief as this Court deems just and proper.

<u>JURY DEMAND</u>

Demand is hereby made for trial by jury on all issues so triable.

Respectfully submitted,

TRIPLE M HOUSING LTD.,

By its attorneys,


 /s/ James J. Nicklaus
Paul Michienzie, BBO# 548701
	pm@masatlaw.com
James J. Nicklaus, BBO# 564806
	jnicklaus@masatlaw.com
MICHIENZIE & SAWIN LLC
745 Boylston Street
Boston, MA 02116
(617) 227-5660

DATE:  October 22, 2009